# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Fraternal Order of Police, <u>et al.</u>,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 98-3116 (WBB) |
| **The Board of Governors of the** ) | |
| **Federal Reserve System, <u>et al.</u>,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

## <u>MEMORANDUM</u>

This matter is before the Court on the parties' cross-motions for summary judgment.

Upon consideration of the parties' submissions and the entire record herein, and for the

reasons stated below, Defendants' Motion for Summary Judgment is granted.

## I.      Background

Plaintiffs, the Fraternal Order of Police, Lodge 45/119, Federal Reserve Protective

Officers' Association ("FOP")[1] and Derrick H. Piercy,[2] filed this suit under the Administrative

Procedure Act ("APA"), 5 U.S.C. § 551 <u>et. seq.</u>, against the Board of Governors of the

Federal Reserve System (the "Board"), Alan Greenspan, the Special Labor Relations Panel of

---

[1] FOP is a labor organization, comprised of and established to represent protective officers employed by Federal Reserve Banks, which seeks to obtain collective bargaining rights for the protective officers.  <u>See</u> Complaint ¶¶ 4-6.

[2] Mr. Piercy is a protective officer employed by the Federal Reserve Bank of New York and is President of FOP Lodge 45/119.  <u>See</u> Complaint ¶ 11.

the Federal Reserve System and Laurence H. Meyer,[3] seeking a declaration that the Board

acted ultra vires by enacting the "Policy on Labor Relations for the Federal Reserve Banks,"[4]

12 C.F.R. Part 269 (the "Labor Relations Policy" or "Policy"), which governs the recognition

of labor organizations and related labor relations matters at the Federal Reserve Banks.  In

addition, Plaintiffs seek a declaration that the Board exceeded its authority and acted

arbitrarily and capriciously by mandating the use of a commercial arbitration service and the

payment of associated fees in order to exercise the procedures set forth in the Labor Relations

Policy.  Finally, Plaintiffs challenge the Policy's cost-sharing provisions and the make-up of

the decisionmaking panels on due process grounds.  Plaintiffs seek declaratory relief and

reimbursement of the arbitration fees paid pursuant to the Policy.

        Previously, this Court denied Defendants' Motion to Dismiss, largely because

Defendants' arguments were more appropriate for the summary judgment stage.  The matter is

now before the Court on the parties' cross-motions for summary judgment.  The Court adopts

the facts set forth in its Memorandum of August 2, 2002 which fully describe the

circumstances leading to Plaintiffs' Complaint.  Currently at issue is whether the Board

---

[3] The Complaint names as defendant former Federal Reserve Governor Laurence Meyer, whose term ended in January 2002.  Governor Edward Gramlich replaced Governor Meyer as the Board member on the Federal Reserve System Labor Relations Panel.  See Defs.' Statement of Material Facts As to Which There is No Genuine Dispute at ¶¶ 1-2.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Governor Gramlich is automatically substituted for Governor Meyer as a defendant in this action.

[4] Plaintiffs also challenge the "Policy on Labor Relations for the Board of Governors of the Federal Reserve System," which governs labor relations for employees of the Board. However, Plaintiffs' claims do not involve employees of the Board nor do Plaintiffs challenge specific aspects of the "Policy on Labor Relations for the Board of Governors of the Federal Reserve System."  Therefore, the Court's analysis is limited to the "Policy on Labor Relations for the Federal Reserve Banks," 12 C.F.R. pt. 269.

exceeded its statutory mandate by promulgating regulations governing labor relations, whether the cost-sharing provisions of the Labor Relations Policy are lawful, and whether the Plaintiffs were deprived of any due process rights.

## II.     The Policy

The Labor Relations Policy at issue succeeded and revised the "Policy on Unionization and Collective Bargaining for the Federal Reserve Banks" ("1969 Policy"), which the Board adopted in 1969.  See Board of Directors of the Federal Reserve System, Policy on Unionization and Collective Bargaining for the Federal Reserve Banks, May 9, 1969.  The Board adopted the 1969 Policy in recognition of a gap in statutory coverage regarding unionization for Federal Reserve employees.  See id.  The Board issued the current Policy in its final form on July 11, 1983, after notice and comment, "[p]ursuant to its statutory authority [under the Federal Reserve Act, 12 U.S.C. §§ 221-522 (2001)] to exercise general supervision over the twelve regional Federal Reserve Banks that are part of the Federal Reserve System." Final Policy Statements, Policy on Labor Relations for the Federal Reserve Banks; and Policy on Labor Relations for the Board of Governors of the Federal Reserve System, 48 Fed. Reg. 32,330, 32,330-32,331 (July 15, 1983).

The Labor Relations Policy creates an infrastructure and delineates certain procedures for employee organizing, collective bargaining and the resolution of labor disputes.  For example, the Policy (1) creates a Special Tribunal to oversee the representation election process and to resolve any issues that arise, (2) defines the procedures by which employees or a labor organization can request a representation election, (3) describes the representation election process, (4) outlines measures for resolving post-election objections, and (5) creates a

Federal Reserve System Labor Relations Panel to receive claims of unfair labor practices.  <u>See</u> 12 C.F.R. pt. 269.

The Policy provides that once a labor organization presents a request for a representation election by at least thirty (30) percent of the employees in a proposed bargaining unit, the labor organization and the Reserve Bank shall impanel a Special Tribunal. 12 C.F.R. § 269.4(a), (b).  The Special Tribunal is comprised of a representative from the labor organization, a representative from the Reserve Bank, and a neutral arbitrator chosen by the labor organization and the Reserve Bank from a list of professional arbitrators provided by the American Arbitration Association ("AAA"),[5] 12 C.F.R. § 269.4(a).  The professional arbitrator serves as the chairperson of the Special Tribunal.  <u>Id.</u>

If a Reserve Bank and labor organization are unable to agree on the appropriate bargaining unit, the Special Tribunal is authorized to investigate facts, conduct hearings and rule on the propriety of the proposed bargaining unit.  12 C.F.R. § 269.4(b).  The expenses for this process, including the fees of the AAA and the Special Tribunal's arbitrator-chairperson are borne equally by the Reserve Bank and the labor organization.  <u>Id.</u>

Once an appropriate bargaining unit has been determined, the Special Tribunal must order a representation election.  12 C.F.R. § 269.5(a).  The election is held under the auspices of the AAA, subject to the AAA's election rules and regulations.  12 C.F.R. § 269.5(b).  The fees charged by the AAA for its election services are borne equally by the Reserve Bank and the labor organization.  <u>Id.</u>

---

[5] The AAA is a  a non-profit provider of conflict management and dispute resolution services.  <u>See</u> AAA website, *available at* http://www.adr.org/About.

The Special Tribunal also hears and decides any post-election objections.  12 C.F.R.

§ 269.5(f).  The Policy provides that a party may appeal the Special Tribunal's ruling on

objections to the Federal Reserve System Labor Relations Panel (the "Panel"), id., which is

comprised of three members:  one member of the Board, who serves as chairperson, and two

public members selected by the Board of Governors.  12 C.F.R. § 269.11.  The Policy does

not indicate how costs of post-election objections and appeals are to be paid.

Aside from post-election appeals, the Panel is entrusted with resolving unfair labor

practice charges.  12 C.F.R. § 269.6; 12 C.F.R pt. 269b.  The Panel may refer an unfair labor

practice charge to the AAA for investigation and determination of whether the charging party

has established a prima facie case.  12 C.F.R. § 269b.210.  The Panel normally bears the costs

associated with investigating and determining an unfair labor practice charge; however, costs

may be assessed to a party in instances where a "clearly spurious charge has been filed or

where the filing of a charge was necessary to redress the respondent's flagrant misconduct."

12 C.F.R. § 269b.230.

Finally, the Policy prescribes procedures for dealing with employee grievances, 12

C.F.R. § 269.8, and provides for the assistance of an independent mediator upon request in the

event of an impasse in negotiations for a collective bargaining agreement.  12 C.F.R. § 269.9.

**III.     Summary Judgment and Standard of Review**

Summary judgment is appropriate when the record shows that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  "[W]hen a party seeks review of agency action under the APA,"

the "'entire case' on review is a question of law."  American Bioscience, Inc. v. Thompson,

5

269 F.3d 1077, 1083 (D.C. Cir. 2001) (citing Marshall County Health Care Auth. v. Shalala,

988 F.2d 1221, 1226 (D.C. Cir. 1993)).

A court must set aside an agency decision under the APA if it is "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In

evaluating an agency's interpretation of a statute it administers, a court will determine

"whether Congress has directly spoken to the precise question at issue."  Chevron, U.S.A.,

Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984).  If so, the

unambiguous intent of Congress prevails.  Id. at 842-43.  However, if Congress has not

directly addressed the precise question at issue, and the agency has acted pursuant to an

express or implied delegation of authority, a court will defer to an agency's interpretation so

long as it is reasonable.  Id. at 843-44.

Deference to the Board's actions is appropriate in this case because Congress

delegated broad supervisory authority to the Board and empowered it to "make all rules and

regulations necessary to enable" it to perform its general supervisory duties over the Federal

Reserve Banks.  See 12 U.S.C. § 248(i), (j).

IV.    Discussion

A.    The Board Has Authority to Adopt the Labor Relations Policy.

Plaintiffs contend that the Labor Relations Policy must be set aside because the Board

exceeded its statutory mandate in implementing the Policy.  Plaintiffs argue that the legislative

context and history of the Federal Reserve Act, 12 U.S.C. §§ 221-522, indicates that the

Board's authority to exercise "general supervision" does not extend to such specialized areas

as labor relations, but rather is limited to banking, credit and monetary policy matters.  In

response, Defendants maintain that the matter of labor relations is well within the Board's "general supervision" authority, 12 U.S.C. § 248(j), to "make all rules and regulations necessary to enable" it to perform its duties under the Federal Reserve Act, 12 U.S.C. § 248(i).

As Plaintiffs point out, the bulk of the Federal Reserve Act necessarily addresses itself to the intricacies of monetary and banking matters.  However, so long as the Board's interpretation of its "general supervision" authority "is based on a permissible construction of the statute," the Board's judgment is entitled to "controlling weight."  See Chevron, 467 U.S. at 843-44.

It is apparent that Congress intended the Board to oversee more than those matters specifically enumerated in the Federal Reserve Act, 12 U.S.C. § 248.  Congress did not define the particular powers that would fall under the Board's "general supervision."  See 12 U.S.C. § 248(j).  Instead, Congress left that decision to the Board, which has consistently interpreted the phrase to reach many non-banking functions.  For example, the Board has interpreted its general supervisory power to authorize policies relating to subsidies of Reserve Bank cafeteria costs, bank building and equipment acquisitions, discretionary bank expenditures, and travel. See Federal Reserve Administrative Manual, Budgets and Expenses §§ 1-016, 1-017, 1-049. The legislative history to the Federal Reserve Act reinforces the conclusion that the Board's general supervisory power extends broadly.  See, e.g., 50 Cong. Rec. 4673-4674 (1913) (Board entrusted with "supreme oversight and control of the whole [Federal Reserve] System"); 50 Cong. Rec. 4644 (1913) (Board is "capstone" of Federal Reserve System); 51 Cong. Rec. 174 (1913) (Board to be given "absolute command" of Federal Reserve System);

51 Cong. Rec. 901 (1913) (Board possesses "complete supervisory control" of Federal Reserve System).

Other sections of the Federal Reserve Act suggest that the Board's powers extend beyond banking to personnel-related matters as well.  For example, the Act establishes the Board's authority to appoint three members of each Reserve Bank's nine-member board of directors, 12 U.S.C. §§ 302, 305; to designate each Reserve Bank's chairman of the board, 12 U.S.C. § 305; to approve the appointment of the president and first vice-president of each Reserve Bank, 12 U.S.C. § 341 Fifth; to suspend or remove officers or directors of any Reserve Bank, 12 U.S.C. § 248(f); and to approve the compensation of directors, officers, and employees of the Reserve Banks, 12 U.S.C. § 307.

Moreover, the fact that the rules and procedures governing the unionization of employees in both the private and public sectors fail to apply to the employees of the Reserve Banks is itself persuasive on the issue.  The National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 141-197, which controls labor relations for private sector employers, expressly excludes the Federal Reserve Banks from the definition of "employer."  See 29 U.S.C. § 152(2).  Likewise, the Federal Service Labor-Management Relations Statute ("FSLMRS") (Title VII of the Civil Service Reform Act of 1978), 5 U.S.C. §§ 7101-7135, which institutes a framework for the representation of federal employees, limits its scope to employees of "executive agencies," 5 U.S.C. § 7103(a)(3), a term interpreted by the Federal Labor Relations Authority[6] to exclude the Federal Reserve Banks.  See Decision of Federal Labor Relations

---

[6] The Federal Labor Relations Authority is responsible for carrying out the purpose of the Federal Service Labor-Management Relations Statute.  See 5 U.S.C. §§ 7104-7105.

Authority Regional Director Declining Jurisdiction over FOP's Unfair Labor Practice Charge, Case No. BN-CA-80135 (February 25, 1998).  These statutory exemptions would create a vacuum for Reserve Bank employees unless the Board's general supervisory authority extends to managing labor relations.

Given Congress's broad grant of authority to the Federal Reserve Board, along with the gap in statutory coverage regarding unionization for Federal Reserve Bank employees, the Board's judgment regarding its authority to adopt the Policy is controlling.

**B.**     **The Board's Decision to Mandate the Use of the AAA for Representation Elections and Unfair Labor Practice Investigations is not Arbitrary and Capricious.**

Even if the Board has authority to issue regulations governing labor relations, Plaintiffs challenge, as arbitrary and capricious, the Board's decision to mandate the use of the AAA for representation elections and unfair labor practice investigations rather than to allow the use of the Federal Mediation and Conciliation Service ("FMCS"), an independent agency which provides professional mediation assistance in the private and public sectors for minimal or no cost, see 29 U.S.C. §§ 172-173.  The Court finds the Board's decision reasonable in this regard.

During the Policy's notice and comment period, FMCS offered its "professional mediation services" to the labor relations process.  Comment Letter from Kay McMurray, Director, Federal Mediation and Conciliation Service, to William W. Wiles, Secretary, Board of Governors of the Federal Reserve System (May 24, 1983) (Rec. D0082-84).  Specifically, FMCS indicated that its services could provide substantial value to Reserve Bank contract negotiations and were particularly relevant to the Policy's section governing the mediation of

negotiation impasses, 12 C.F.R. § 269.9.  See id.  In response, the Board revised the Policy to

delete the requirement that the AAA be used as mediator in the event of an impasse in the

bargaining process.  See Letter from William W. Wiles, Secretary, Board of Governors of the

Federal Reserve System to Kay McMurray, Director, Federal Mediation and Conciliation

Service (July 11, 1983) (Rec. D0131); see also Final Policy Statements, Policy on Labor

Relations for the Federal Reserve Banks; and Policy on Labor Relations for the Board of

Governors of the Federal Reserve System, 48 Fed. Reg. 32,330 (July 15, 1983) (Rec. D0115).

The Board explained that the change provides the parties with the flexibility to use the FMCS,

the AAA or any other recognized organization or individual as a source of neutral mediator in

the event of a negotiations impasse.  Id.

       Therefore, to the extent that FMCS offered services relevant to the Policy, the Board

revised the Policy to allow for the use of the FMCS.  In its comment, the FMCS did not

indicate that it could offer assistance in the areas of representation elections or unfair labor

practice charges.  Accordingly, the Board's decision to retain the AAA as the required

provider of arbitration services during representation elections and unfair labor practice

charges is not arbitrary.

       **C.      The Board's Cost-Sharing Requirement is Reasonable.**

       Plaintiffs further maintain that the Board exceeded its authority and acted arbitrarily

and capriciously by requiring labor organizations to share in the arbitration costs associated

with the representation election process.  Plaintiffs claim that Congress must specifically

authorize an agency to charge fees.  Thus, Plaintiffs characterize the Policy's cost-sharing as

an unauthorized and impermissible "user fee" system.  The Court disagrees.

Plaintiffs are correct that there must be some statutory basis for any agency requirement giving rise to a fee.  See Seafarers Int'l Union of North America v. United States Coast Guard, 81 F.3d 179, 186 (D.C. Cir. 1996).  However, such a basis exists in Congress's broad grant of supervisory power to the Board over the Federal Reserve.  For reasons stated previously, the Board's adoption of the Labor Relations Policy, as a whole, falls within the Board's authority to "make all rules and regulations necessary to enable" it to provide general supervision over the Federal Reserve Banks.  See 12 U.S.C. § 248(i), (j).  Necessarily included in this authority is the Board's power to devise a reasonable method to cover the expenditures incident to its labor relations scheme.

Cost-sharing in the representation election context is reasonable.  Through its cost-sharing scheme, the Board addresses arbitration costs not covered by congressionally appropriated funds and secures, to the extent possible, the existence of an impartial decision maker in the representation election process.[7]  Moreover, the cost-sharing comports with the practice followed by professional arbitration associations to ensure fairness and impartiality. See Task Force on Alternative Dispute Resolution in Employment, A Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising out of the Employment Relationship, ¶ C(6) (May 9, 1995), at http://www.adr.org/sp.asp?id=22078 ("Impartiality is best assured by the parties sharing the fees and expenses of the mediator and arbitrator."); American Arbitration Association, Labor Arbitration Rules, ¶ 44 (May 1, 2004), at http://www.adr.org/sp.asp?id=22107 ("Expenses of the arbitration . . . shall be borne equally

---

[7]  The effect of cost-sharing on perceived impartiality of decision makers is highlighted by Plaintiffs' claim that, because the Board alone compensates members of the Panel, the Panel is structurally biased.  See infra p. 12.

11

by the parties, unless they agree otherwise.").  Consequently, Plaintiffs may disagree with the

cost-sharing procedures the Board put in place, but they have failed to show that the Board's

establishment of those procedures is arbitrary or capricious.

>   **D.      Plaintiffs' Due Process Claims Fail.**

Next, Plaintiffs maintain that the Policy's cost-sharing provisions and structural make-

up of the decisionmaking bodies violate the Due Process Clause of the Fifth Amendment.

Specifically, Plaintiffs assert, if a labor organization or a group of employees seeks to organize

and cannot afford the associated fees, they cannot exercise their rights under the Policy.  In

addition, Plaintiffs argue that because members of the Panel[8] are directly employed or

compensated by the Board, Plaintiffs are denied the opportunity to adjudicate their disputes

before an impartial decisionmaking body.

To establish a due process violation, Plaintiffs must demonstrate that they have a

protected liberty or property interest and that the government deprived them of that interest

without due process of law.  See, e.g., Bishop v. Wood, 426 U.S. 341, 343 (1976), *overruled*

*in part on other grounds by* Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985)

(discussing elements of due process claim under Fourteenth amendment); UDC Chairs

Chapter, American Ass'n of Univ. Professors v. Bd. of Trustees, 56 F.3d 1469, 1471 (D.C.

Cir. 1995) (same under Fifth Amendment).  Plaintiffs have failed to demonstrate a protected

---

[8] While Plaintiffs point out the potential bias rooted in the composition of the Special Tribunal as well, they limit their due process challenge to the make-up of the Panel.  See Pls.' Cr. Mot. for S.J. at 34 n.18.  The Panel is comprised of one Board member, who serves as chairperson, and two public arbitrators, with no present or past affiliation with the Federal Reserve System, selected and paid for by the Board.  12 C.F.R. § 269.11.  The Panel members serve staggered terms and may only be removed by the Board upon notice and hearing, and only for neglect of duty or malfeasance in office.  Id.

interest in this case.

Plaintiffs allege due process deprivations in connection with the FOP's failed effort to become the recognized representative for Federal Reserve Bank protective officers for the purpose of collective bargaining.  See Complaint ¶ 6.  Thus, it seems that Plaintiffs base their due process claim on an alleged deprivation of the right to bargain collectively on behalf of the protective officers.  There is, however, no constitutionally protected right to bargain collectively.  See, e.g., Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465 (1979) (per curiam) (while the First Amendment protects a public employee's right to associate, to speak freely, and to petition openly, the Constitution "does not impose any affirmative obligation on the government to listen, to respond to or . . . to recognize the association and bargain with it."); Babbitt v. United Farm Workers National Union, 442 U.S. 289, 313 (1979) (state was not constitutionally obliged under First Amendment to provide any procedures for public employees to bargain collectively, so limited procedures afforded presented no constitutional issue).

Consequently, for a protected right to bargain to exist at all for Federal Reserve Bank employees, it must be conferred by statute.  See Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1196 (10th Cir. 1999) (in claims of Fifth Amendment due process violations, courts consider whether federal law has created such a protected interest).  Unlike for the majority of the nation's employees, however, there is no statutory provision which grants Reserve Bank employees, or their representatives on their behalf, the right to bargain collectively.  See discussion *supra* p. 8.  Accordingly, there is no protected right to bargain in

this case and, despite the Policy's shortcomings, it presents no due process problems.[9]

## V.      Conclusion

For the reasons set forth above, the Court finds that (1) the Board's Policy is not ultra vires, (2) the Board's decision to mandate the use of the AAA for representation elections and unfair labor practice investigations is not arbitrary and capricious, (3) the Policy's cost-sharing provisions are lawful and reasonable, and (4) Plaintiffs failed to identify a protected interest under the Due Process Clause.  In an accompanying Order, the Court will grant Defendant's Motion for Summary Judgment.


                                                   /s/
                                   _____
                                        William B. Bryant
                                        Senior United States District Judge



Date:   July 27, 2005


_____

[9] Even if Plaintiffs had identified a protected interest in this case, the Court would be unable to resolve their conflicting claims regarding the compensation and impartiality of the decisionmaking panels under the Policy.  Plaintiffs first challenge the Policy's requirement that the labor union pay a portion of the arbitration costs.  See Pls.' Cr. Mot. for S.J. at 30-31.  Yet Plaintiffs also claim the Panel is structurally biased against the union on the ground that "the Board of Governors pays for the complete remuneration of the [P]anel members."  See Pls.' Cr. Mot. For S.J. at 34.  Of course, it would be preferable for Reserve Bank employees to have access to a cost-free, perfectly impartial decisionmaking body, as is provided for in the private and federal sectors.  However, that is a matter for the legislature and not for this Court.